IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| HERMOLES JOSE CALDERON,           )<br>                                                            )<br>              Petitioner,                         )<br>                                                            )<br>v.                                                         )     Case No. 6:26-CV-03123-BCW<br>                                                            )<br>SHERIFF JIM C. ARNOTT,            )<br>Greene County, Missouri, Sheriff,  )<br>et al.,                                                 )<br>                                                            )<br>              Respondents.                    )  | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Hermoles Jose Calderon's Verified Petition for Writ of Habeas Corpus. (Doc. #1). The Court, being duly advised of the premises, in consideration of the Verified Petition, the Respondents' brief (Doc. #3), and Petitioner's Traverse (Doc. #4), grants the petition for habeas corpus relief as follows.

## BACKGROUND

On February 25, 2026, Petitioner Hermoles Jose Calderon, through counsel, filed the instant verified petition for writ of habeas corpus in this Court, alleging three claims: (1) Violation of the Castanan-Nava Settlement Agreement; (2) Violation of ICE's Own Regulations; and (3) Violation of Fifth Amendment Right to Due Process – Procedural Due Process. (Doc. #1). Calderon asserts that he was re-detained by Immigration and Customs Enforcement ("ICE") without notice and an opportunity to be heard in violation of his due process rights and ICE regulations. Id.

As set forth in his Verified Petition, Calderon is in the custody of the U.S. Department of Homeland Security ("DHS"), housed at the Greene County Jail in Springfield, Missouri. (Doc. #1 at 7). Calderon's petition for habeas relief names the following Respondents in their respective

1

official capacities: (1) Jim C. Arnott, Greene County, Missouri, Sheriff, who (a) is responsible for the Greene County Jail in Springfield, Missouri, (b) has ultimate authority over the facility where Calderon is detained, and (c) has immediate physical custody of Calderon; (2) Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), who (a) is responsible for the administration of the immigration laws pursuant to Section 103(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1103(a), (b) supervises Respondent Olson, (c) is legally responsible for pursuing Calderon's detention and removal, and (d) has legal custody of Calderon; (3) Samual Olson, Office Director for the Chicago Field Office for ICE within DHS, who (a) administers immigration laws and executes detention and removal determinations within the Chicago region and (b) has legal custody of Calderon; and (4) DHS itself. Id. at 7-8.

The Government does not contest the facts alleged in Calderon's verified petition. (Doc. #3). Calderon is a 26-year-old native and citizen of Venezuela. (Doc. #1 at 10). Using the Customs and Border Protection's ("CBP") mobile device application called CBP One, Calderon made an appointment to present himself at the border for inspection and to seek asylum in the United States. Id. at 1, 10. On July 25, 2024, Calderon presented himself at the Hidalgo, Texas, port of entry at his appointment time to seek asylum. Id. at 10. Respondents determined Calderon was inadmissible pursuant to § 212(a)(7)(A)(i)(I) of the INA. Id. at 10-11. Respondents served him with a Notice to Appear (Doc. #3-2) and released him into the United States pending removal proceedings before an immigration judge. (Doc. #1 at 10-11).

The I-94 admission record, issued on July 25, 2024, listed his class of admission as "DT," indicating Calderon was paroled into the United States under 8 U.S.C. § 1182(d)(5). (Doc. #1 at 11; Doc. #1-1; Doc. #1-2 at 4). Once Calderon filed for asylum, he was considered to be in a period of "stay authorized by the Secretary" and would not accrue unlawful presence while the asylum application is pending. (Doc. #1 at 11) (citing 8 U.S.C. § 1182(a)(9)(B)(iii)(II)). Calderon also

2

timely filed for employment authorization, which was approved and remains valid until November 27, 2030. (Doc. #1 at 11; Doc. #1-3). His parole remains valid until July 24, 2026. (Doc. #1 at 1; Doc. #1-1 at 1). Calderon has complied with all requirements imposed by ICE as part of his parole. (Doc. #1 at 2).

Respondents do not contest Calderon's characterization of his arrest by ICE agents. (Doc. #3). On February 4, 2026, at approximately 6:50 a.m., Calderon exited his home in Chicago, Illinois, walked to his car, and started the engine to allow the car to warm up. (Doc. #1 at 2, 11). As Calderon was getting out of the car, he noticed a tall man, dressed in a black coat and gray pants, approaching with a hand on a holstered gun. Id. At the same time, a big gray truck crashed into the front driver's side of Calderon's car, causing severe damage to the vehicle. Id. Two masked men jumped out of the truck. Id. One had his weapon holstered and the other had his weapon in his hand. Id. Calderon jumped out of his car, and the three men surrounded Calderon and pushed him against a nearby iron fence. Id.

It is unclear if the men identified themselves as ICE agents. However, Calderon determined they were ICE agents and told them he was not a criminal and had documents. (Doc. #1 at 2). The men told him his documents were "worth nothing" and they would hurt Calderon if he did not let go of the fence. Id. One agent pulled out a taser and threatened to taze him. Id.

Respondents have submitted a warrant for Calderon's arrest, dated December 30, 2025. (Doc. #3-1). It is unclear if the agents presented Calderon with the warrant during the arrest on February 4, 2026. The warrant states "there is probable cause to believe that [Calderon] is removable from the United States … based upon: … the pendency of ongoing removal proceedings against the subject." Id. The certificate of service on the warrant is signed and dated February 4, 2026. Id.

Respondents do not contest that ICE did not provide Calderon written notice before revoking his parole. (Doc. #3). Nor did Respondents provide him a pre-deprivation hearing or an individualized legal justification for the changed circumstances.

On February 25, 2026, this Court issued an Order to Show Cause why the relief sought in Calderon's verified petition for habeas relief should not be granted. (Doc. #2). Respondents filed a timely response to the Order to Show Cause on February 27, 2026. (Doc. #3). On March 2, 2026, Calderon filed his traverse. (Doc. #4).

## LEGAL STANDARD

A person detained by the Government may challenge the legality of the confinement through a petition for writ of habeas corpus, including an individual challenging detention relating to immigration proceedings. Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); Zadvydas v. Davis, 533 U.S. 678, 687 (2003); Roble v. Bondi, 803 F. Supp. 3d 766, 770 (D. Minn. 2025). The petitioner "bears the ultimate burden of showing that his detention violates the law." Yee S. v. Bondi, 806 F. Supp. 3d 894, 900 (D. Minn. 2025) (citing Copenhaver v. Bennett, 355 F.2d 417, 422 (8th Cir. 1966)). The petitioner "must satisfy his burden of proof by a preponderance of the evidence." Freeman v. Pullen, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (cleaned up).

## ANALYSIS

The dispositive issue for Calderon's verified petition is whether Respondents violated ICE regulations when ICE re-detained him without notice.

The Government's ability to detain, release, and revoke the release of aliens subject to removal orders is governed by the INA and specific regulations. Under ICE regulations, once parole is granted, it may be automatically terminated without written notice in only two circumstances: (i) upon the departure from the United States; or (ii) at the expiration of the time for which parole was authorized. 8 C.F.R. § 212.5(e)(1). In all other cases, the non-citizen must be

4

given written notice. Id. at § 212.5(e)(2) ("In cases not covered by paragraph (e)(1) of this section, … parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.").

Calderon asserts that he was not given notice that his parole was being revoked before being arrested without a warrant and is, therefore, entitled to release. (Docs. #1, #4). Respondents argue that the Government possessed a warrant for Calderon's arrest and this Court lacks jurisdiction to hear Calderon's petition. (Doc. #3).

Before considering the merits of Calderon's petition, the Court first addresses Respondents' challenge to the Court's jurisdiction. Respondents argue the Court lacks jurisdiction under 8 U.S.C. § 1252(b)(9) and (g).

### A. The Court has jurisdiction over Calderon's petition.

Respondents argue this Court lacks jurisdiction to consider Calderon's claims under 8 U.S.C. § 1252(b)(9) and (g). Section 1252(b)(9) specifically prohibits § 2241 habeas relief to review final orders of removal. Section 1252(g) places restrictions on judicial review of orders of removal.

The Supreme Court has interpreted § 1252(g) narrowly. Dep't of Homeland Sec. v. Regents of the Univ. of Ca., 591 U.S. 1, 19 (2020). And courts have held that subsections (b)(9) and (g) of § 1252 do not strip district courts of habeas jurisdiction over challenges to the lawfulness or conditions of immigration detention. See Hernandez v. Gonzales, 424 F.3d 42, 42-43 (1st Cir. 2005) (citing H.R. Cong. Rep. No. 109-72, at 2873 (May 3, 2005)); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

In the matter before this Court, Calderon does not challenge an underlying order of removal. Indeed, no final order of removal has been entered. Rather, he challenges the lawfulness of his arrest, the revocation of his parole, and his re-detention.

Respondents argue the Eighth Circuit has held that § 1252(b)(9) and (g) strip district courts of jurisdiction over all habeas petitions brought by non-citizen detainees. (Doc. #3). In Mohamed v. Gonzales, the petitioner sought review of a removal order before the Eighth Circuit. 477 F.3d 522 (8th Cir. 2007). The Eighth Circuit noted it was permitted to review "all constitutional claims and questions of law in the removal order" under § 1252(a)(2)(D). Id. at 526. When reaching this conclusion, the Eighth Circuit stated § 1252 was "an adequate and effective substitute to test the legality of a person's detention." Id. Respondents read this statement to mean that the Eighth Circuit has precluded district court habeas review of the lawfulness and conditions of non-citizen detention. (Doc. #3). However, the parenthetical citation suggests that the Eighth Circuit found § 1252 was an adequate and effective substitute for habeas proceedings specifically brought to resist an order of removal. Mohamed, 477 U.S. at 526 (citing I.N.S. v. St. Cyr, 533 U.S. 289, 314 n.38 (2001) (("As to the question of timing and congruent means of review, we note that Congress could, without raising any constitutional questions, provide an adequate substitute [to replace habeas proceedings for aliens resisting a removal order] through the courts of appeals.")).

Even if Respondents are correct that the Eighth Circuit extended § 1252 to all non-citizen detentions, the Supreme Court has subsequently held that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." Zadvydas, 533 U.S. at 688. Citing Zadvydas, courts across the country have asserted jurisdiction over habeas challenges to ICE re-detentions. See Hasiholan v. Zoley, No. 5:25-cv-03196 AH (DSR), 2026 WL 263645, at *3 (C.D. Cal. Jan. 30, 2026) (collecting cases). Further, this Court recently held that subsections (b)(9) and(g) do not deprive this Court of jurisdiction over

6

"constitutional or statutory claims which precede and are collateral to [the removal process], including, as relevant here, unlawful arrest or detention." Dadfar v. Arnott, No. 6:25-cv-3329-MDH, 2025 WL 3452372, at *2 (W.D. Mo. Dec. 1, 2005).

Respondents additionally cite Tazu v. Attorney General United States, 975 F.3d 292 (3d Cir. 2020), to support their argument that the Court lacks jurisdiction. (Doc. #3). However, Tazu is inapposite. In Tazu, the petitioner had notice of the reasons for his re-detention (removal), had an opportunity to be heard, and had exhausted all avenues to stay in the country legally. 975 F.3d 292. And the Government had all documents necessary to remove the petitioner and re-detained him to execute the removal order. Id. Here, the facts are distinguishable. In addition to not providing Calderon notice, Respondents have not provided any evidence supporting that the re-detention of Calderon was to remove him. As such, Tazu does not persuade the Court that it lacks jurisdiction.

Because § 1252(b)(9) and (g) do not strip the Court of jurisdiction over Calderon's habeas petition, the Court now turns to the merits of his claims.

**B.  Habeas relief is appropriate because the Government did not follow its own regulations when re-detaining Calderon.**

Calderon argues he is entitled to habeas relief because Respondents violated (1) the settlement agreement entered in Castanon-Nava v. Dep't of Homeland Sec., No. 1:18-cv-3757, 2025 WL 6324179 (N.D. Ill. Oct. 7, 2025); (2) ICE's own regulations; and (3) Calderon's due process rights. (Docs. #1, #4). Respondents argue Calderon is not entitled to relief under the Castanon-Nava settlement agreement but did not address Calderon's other two counts. (Doc. #3). Because Respondents violated ICE's own regulations, the Court does not reach the merits of Calderon's other arguments.

Respondents violated ICE's regulations when they revoked Calderon's parole without notice. Under 8 U.S.C. § 212.5(e)(1) and (e)(2), written notice is required before parole can be revoked except (i) when the parolee departs the United States or (ii) the authorized parole period

7

has expired. Neither exception is applicable here. Therefore, ICE was required to provide written notice before revoking Calderon's parole. Respondents provided none, thus violating ICE's regulations. On this basis, Calderon is entitled to the relief he requests. Accordingly, it is hereby

ORDERED Petitioner Hermoles Jose Calderon's Verified Petition for Writ of Habeas Corpus (Doc. #1) is GRANTED. It is further

ORDERED that Respondents shall release Petitioner immediately, no later than 10:00 a.m. CT on March 4, 2026, subject to and in accordance with the conditions in his preexisting parole requirements. It is further

ORDERED that, no later than 10:00 a.m. CT on March 4, 2026, counsel for Respondents shall provide a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner was released from custody in accordance with this Order. It is further

ORDERED that Petitioner's request for attorney's fees is GRANTED. Within 10 days of the date of this Order, counsel shall file a separate and independent motion for attorney's fees, accompanied by detailed billing records supporting a reasonable fee request for time reasonably expended in preparation of the habeas corpus petition.

IT IS SO ORDERED.

Date: March 3, 2026
/s/ Brian C. Wimes
BRIAN C. WIMES, CHIEF JUDGE
UNITED STATES DISTRICT COURT